## THE HOWARD CARROLL.[1]

### REDMOND v. THE HOWARD CARROLL.

#### (*District Court, E. D. New York.* February 3, 1890.)

1. COLLISION—TOW AND SAILING VESSEL.
   A tug with a tow, which, in a narrow channel, takes and maintains a course on the chance that a sailing vessel, beating in plain sight of her, and which she is bound and able to avoid, will know her intention, and break her tack on being signaled, is in fault if collision ensue.

2. SAME—SIZE OF TUG.
   Tugs which undertake to tow large railroad floats about the harbor of New York must be of sufficient power to handle their floats easily and promptly, and able to avoid sailing vessels which they may meet in the course of their navigation.

In Admiralty.

Action for damages occasioned by collision between the schooner Early Bird and a tow in charge of the steam-tug Howard Carroll.

*Goodrich, Deady & Goodrich,* for libelants.

*Hyland & Zabriskie,* for claimant.

[1]Reported by Edward G. Benedict, Esq., of the New York bar.

BENEDICT, J.    This is an action brought by the owners of the schooner Early Bird to recover damages to their vessel occasioned by a collision between that vessel and a tow, consisting of the steam-tug Howard Carroll, at the time towing along-side of her a car-float loaded with 10 cars. The tow was bound down the East river, between Blackwell's island and New York, the schooner beating up the channel.    The only question in the case is whether, under the circumstances proved, the ordinary rule, by which it is the duty of a steamer to avoid a sailing vessel, is to be applied to this tug.    The case of *The A. P. Cranmer*, 1 Fed. Rep. 255, (decided by this court in January, 1880,) affirmed, 8 Fed. Rep. 523, is relied on by the claimants as authority for rejecting the application of the rule in a case like this.    The case of *The A. P. Cranmer* was a very different case.    In that case a tow, consisting of two tugs having 17 canal-boats in tow, was run into by a schooner sailing free, and able, by a slight change, to avoid the tow without difficulty or delay.    In this case the sailing vessel was beating in a narrow channel, where, in order to do anything to avoid the tow, it would be necessary for her to shorten her tack.    The steamer, on the other hand, had but a single vessel in tow along-side, and was able to avoid the sailing vessel, tacking in plain sight ahead of her.    Instead of taking means to avoid the sailing vessel, as she ought to have done, the tug took and maintained her course upon the chance that the sailing vessel would know her intention, and would break her tack upon being signaled by the tug.    But if the tug was not able, through lack of power, to control the float, she was nevertheless in fault; for the safety of the harbor requires that the tugs which undertake to tow the large floats, now so largely employed to transport railroad cars about the harbor, should be of sufficient power to handle their floats easily and promptly, and able to avoid sailing vessels when they are met in the course of their navigation about the harbor.    The libelants are entitled to a decree.